UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 11-11252-hcm |
| THINK3, INC., | § | |
| | § | CHAPTER 11 |
| Reorganized Debtor. | § | |

| | | |
|---|---|---|
| THINK3 LITIGATION TRUST, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | ADVERSARY NO. 13-01081-hcm |
| | § | |
| FILIPO ZUCCARELLO, THOMAS DAVIS, | § | |
| NEST CONSULTING, LTD., FABRIZIO | § | |
| GIUDICI, JOSEPH COSTELLO, SY | § | |
| KAUFMAN, and MARK PERRY, | § | |
| Defendants. | § | |

## AMENDED MOTION[1] OF DEFENDANTS JOSEPH COSTELLO, SY KAUFMAN AND MARK PERRY TO DISMISS, OR ALTERNATIVELY, MOTION TO TRANSFER

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY COURT JUDGE:

COME NOW Defendants Joseph Costello, Sy Kaufman and Mark Perry (collectively, the "Director Defendants") and hereby move, pursuant to Federal Rules of Bankruptcy Procedure 7012 and 7009 and Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss with prejudice this action and all claims asserted against them by the Plaintiff, the Think3 Litigation Trust ("the Trust"), in its Complaint filed on May 15, 2013.[2] Alternatively, the Defendants move to transfer this proceeding to the United States District Court for the District of Delaware

---

[1] The Amended Motion clarifies that Judge Monroe did not sign the transmittal declaration; Brian T. Cumings did. The only other amendment is that the declarations of the individual Director Defendants are included in this filing.
[2] The Complaint asserts Counts 1, 2, 3, 8 and 9 against the Director Defendants. The remaining counts are asserted against Defendants Zuccarello, Giudici and Davis who, insofar as Counsel is aware, have not yet been properly served under the Hague Convention or retained counsel.

pursuant to 28 U.S.C. §1404, 28 U.S.C. §1408, 28 U.S.C. §1412, and Federal Rules of Bankruptcy Procedure 1014 and 7087.

The Trust's Complaint fails on multiple, independent legal grounds, and it fails both procedurally and substantively:

*1) Stern v. Marshall*. First, this Court lacks the constitutional authority, pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (2011), to finally determine the Trust's non-core state law claims, and the Director Defendants have not and will not consent to such a determination. None of the Director Defendants have filed proofs of claim,[3] nor do they have any basis for doing so, as they have no interests in the Debtor (they were directors of a pre-bankruptcy predecessor of the Debtor), and the time for submitting claims has long passed in any event.

2) No "Related To" or Personal Jurisdiction. Second, the debtor's plan has been confirmed, and the Trust's post-confirmation claims do not fall within this Court's "related to" jurisdiction. Consequently, nationwide service of process via Rule 7004 is not applicable, and instead the Trust must establish personal jurisdiction via the traditional "minimum contacts" test. However, the requisite contacts do not exist as to the Director Defendants, who were never directors of the Texas-based Debtor, but its non-Texas based predecessor, which was sold in 2010. Because this Court lacks personal jurisdiction over the Director Defendants, the Court must dismiss the Trust's Complaint as to each of the Director Defendants in its entirety.

3) The *Bangor Punta* Doctrine. Third, the *Bangor Punta* Doctrine, so named after a 1974 U.S. Supreme Court decision, bars a post-merger corporation and its stockholders from suing the company's pre-merger directors for alleged pre-merger breaches of fiduciary duty,

---

[3] As the Director Defendants have not filed any proofs of claim, Counts 8 and 9 of the Trust's claims, for subordination and for a declaratory judgment for disallowance and subordination of claims, are by definition moot because they have no object, and thus they also fail as a matter of law.

mismanagement, and the like. Here, the Debtor (Think3) is a post-merger corporation (the 2010 sale of Think3 occurred prior to any bankruptcy filing), and thus neither the Debtor nor its post-merger stockholders could assert any claims against its pre-merger directors for alleged pre-merger wrongs, because the *Bangor Punta* Doctrine bars such claims. In the case at bar, because the Trust could only be assigned and have authority to assert such claims as the Debtor or its stockholders could themselves assert (and nothing more), the Trust, too, is barred from asserting the state law claims against Think3's pre-merger directors that are set out in Counts 1 through 3 of the Complaint.[4]

4) Director Exculpation from Duty of Care Claims. Substantively, under Delaware law, the Director Defendants cannot be held liable for monetary damages for any alleged violations of the duty of care, including claims of gross negligence. As authorized by Section 102(b)(7) of the Delaware General Corporation Law, the pre-merger stockholders of Think3 adopted an exculpatory charter provision that eliminated the personal liability of its directors for claims of breach of the duty of care. To the extent the Trust's allegations in Count 1 are premised on such allegations,[5] and the entirety of Count 2 is (on its face), these counts fail as a matter of law.

5) Failure Adequately to Plead Fiduciary Duty and Fraud Claims. The Trust also fails adequately to plead claims for breach of fiduciary duty and fraud in any event. For example, Count 1 of the Complaint sets forth a laundry list of acts or failures to act by which the Director Defendants are claimed to have breached duties owed to the *old* (pre-merger) Think3. These vague allegations, in many instances unsupported by any facts, let alone the required

---

[4] The terms of the 2010 Think3 Merger Agreement, and the continuous stock ownership requirement of Fed. R. Civ. P. 23.1, also bar the Trust from asserting any *stockholder* claims, whether direct or derivative.

[5] *See* Compl.¶44 ("Defendants breached these fiduciary duties by engaging in the conduct described above and below which includes but is not limited to self-dealing, bad faith and/or gross negligence.").

1931665.1

particularized facts, fail to rebut the presumption of the business judgment rule to which the decisions of the Director Defendants are entitled (even apart from the bars of *Bangor Punta* and Section 102(b)(7)). Similarly, the Trust's attempt to establish a breach of the duty of loyalty by the Director Defendants, predicated, for example, on their purported failure to exercise adequate corporate oversight, is nothing more than a hindsight-inspired attempt to hold the Director Defendants personally liable for business decisions that, as events unfolded, did not turn out well. Such allegations are simply not colorable.

6) Alternative Prayer for a Transfer of Venue to Delaware. Alternatively, the Director Defendants seek to transfer this adversary matter to the United States District Court for the District of Delaware. The Trust seeks to recover from the Director Defendants – none of whom have any connection to the State of Texas – for transactions and events that took place in connection with running a non-Texas-based, Delaware corporation. As the Director Defendants have no connection to the State of Texas, and Delaware law governs the Trust's claims, for the convenience of the parties and in the interests of justice, it is submitted that this case, if not dismissed, should be transferred to Delaware.

In support of this Motion to Dismiss, the Director Defendants incorporate the arguments and authorities in their accompanying Brief in Support, and the facts in the Declarations of Messrs. Costello, Kaufman, Perry, Brian T. Cumings and the respective attachments thereto, filed contemporaneously herewith.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants Joseph Costello, Sy Kaufman and Mark Perry respectfully pray that the Court dismiss this action and all claims asserted against them, with prejudice, or, in the alternative, transfer this matter to the District of

1931665.1

Delaware, for the reasons set forth above, and that the Court grant such other and further relief, at law or in equity, to which these Defendants may be justly entitled.

Dated:  August 14, 2013

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, PC
401 Congress Avenue, Suite 220
Austin, Texas 78701
(512) 480-5645
(512) 480-5845 (Facsimile)

By:*/s/ Brian T. Cumings*
Frank R. Monroe
State Bar No. 14271000
Brian T. Cumings
State Bar No. 24082882

ATTORNEYS FOR DEFENDANTS
JOSEPH COSTELLO, SY KAUFMAN, AND MARK PERRY

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2013, I electronically filed the foregoing with the Clerk of Court using the CM-ECF system which will send notification of such filing to the following:

Kenneth M. Krock
Rapp & Krock, PC
3050 Post Oak Blvd., Ste 1425
Houston, Texas 77056

/s/ Brian T. Cumings
Brian T. Cumings

5

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 11-11252 |
| | ) | |
| THINK3, INC., | ) | Hon. H. Christopher Mott |
| | ) | |
| *Reorganized Debtor* | ) | Chapter 11 |
| | ) | |

| | |
|---|---|
| THINK3 LITIGATION TRUST, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | ) |
| | ) Adversary No. 13-01081 |
| FILIPPO ZUCCARELLO, THOMAS DAVIS, | ) |
| NEST CONSULTING, LTD., FABRIZIO | ) |
| GUIDICI, JOSEPH COSTELLO, SY | ) |
| KAUFMAN, AND MARK PERRY, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## DEFENDANTS JOSEPH COSTELLO, SY KAUFMAN AND MARK PERRY'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

## Table of Contents

Table of Authorities ........................................................................................................... i

Preliminary Statement ........................................................................................................ 1

FACTS ................................................................................................................................. 4

History of Think3 ................................................................................................................ 4

The Defendants ................................................................................................................... 5

The Trust's Allegations ...................................................................................................... 6

      Bridge Financings ........................................................................................................ 6

      Italian Liabilities ......................................................................................................... 7

      The Merger ................................................................................................................... 8

New Think3, Inc.'s Bankruptcy ......................................................................................... 9

ARGUMENT ..................................................................................................................... 10

    I.      STANDARD OF REVIEW ..................................................................... 10

    II.     THIS COURT LACKS CONSTITUTIONAL AUTHORITY OVER THE
           TRUST'S CLAIMS WHICH ARE OUTSIDE THE BANKRUPTCY
           COURT'S "RELATED TO" JURISDICTION, AND THEREFORE
           PERSONAL JURISDICTION DOES NOT EXIST BECAUSE
           RELIANCE UPON RULE 7004 TO ESTABLISH JURISDICTION IS
           IMPROPER .............................................................................................. 12

           A.  Legal Standard to Determine Personal Jurisdiction ............................ 15

           B.  Specific Jurisdiction Does Not Exist Over the Director Defendants ... 16

           C.  General Jurisdiction Does Not Exist Over the Director Defendants ... 19

           D.  Maintenance of This Action in Texas Would Violate Traditional
               Notions of Fair Play and Substantial Justice ....................................... 21

    III.    THE TRUST LACKS STANDING TO ASSERT PRE-MERGER
           CLAIMS OF THE FORMER THINK3 OR ITS STOCKHOLDERS ....... 22

    IV.    THE FIRST AND SECOND COUNTS ARE BARRED BY THINK3'S
           SECTION 102(b)(7) EXCULPATORY CHARTER PROVISION .......... 27

V.      THE TRUST'S COMPLAINT FAILS TO ADEQUATELY PLEAD A
        BREACH OF FIDUCIARY DUTY BY THE DIRECTOR
        DEFENDANTS ..........................................................................................32

        A.  Applicable Standards ...........................................................................32

                1.  The Business Judgment Rule Presumption..................32

                2.  The Duty of Care ..........................................................33

                3.  The Duty of Loyalty......................................................34

        B.  None of the Trust's Allegations Adequately Plead a Breach of
            Fiduciary Duty ....................................................................................35

                1.  Allegations Surrounding the 2009 and 2010 Bridge
                    Financings ....................................................................35

                2.  Allegations of Fraud in Connection with the Merger ..38

                3.  Allegations Surrounding the China JV ........................42

                4.  The Italian Liability .....................................................43

                5.  Allegations that the Director Defendants Failed to
                    Exercise Independent Judgment ..................................45

VI.     THE TRUST CANNOT MAINTAIN A CAUSE OF ACTION FOR
        SUBORDINATION...................................................................................46

VII.    THE TRUST CANNOT MAINTAIN A CAUSE OF ACTION FOR
        DECLARATORY JUDGMENT ...............................................................47

VIII.   IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED
        TO THE UNITED STATED DISTRICT COURT FOR THE DISTRICT
        OF DELAWARE ......................................................................................48

PRAYER..............................................................................................................53

1932120.1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Airport Blvd. Apts., Ltd. v. NE 40 Partners, LP (In re NE 40 Partners Ltd.),*
411 B.R. 352 (S.D. Tex. 2009) .................................................................................38

*In re American Housing Foundation,*
469 B.R. 257 (N.D. Tex. 2012)................................................................................15

*Armstrong v. Pomerance,*
423 A.2d 174 (Del. 1980) ........................................................................................50

*ASARCO LLC v. Ams. Mining Corp.,*
382 B.R. 49 (S.D. Tex. 2007) ..................................................................................24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................10, 11

*Bangor Punta Operations, Inc. v. Bangor & A.R. Co.,*
417 U.S. 703 (1974)........................................................................................ *passim*

*Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.),*
266 F.3d 388 (5th Cir. 2001) .............................................................................13, 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................10

*Brehm v. Eisner,*
746 A.2d 244 (Del. 2000) .........................................................................................33

*Brehm v. Eisner (In re Walt Disney Co., Deriv. Litig.),*
906 A.2d 27 (Del. 2006) ...........................................................................3, 28, 44, 45

*In re Caremark Int'l Inc. Deriv. Litig.,* 698 A.2d 959 (Del. Ch. 1996) ........................................43

*In re Citigroup S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009)........................................................................................35, 43, 44

*City of Clinton v. Pilgrim's Pride Corp.*,
    632 F.3d 148 (5th Cir. Tex. 2010) ..........................................................................................11

*Courtland Manor, Inc. v. Leeds*,
    347 A.2d 144 (Del. Ch. 1975)............................................................................................24, 26

*Cytomedix, Inc. v. Safeblood Technologies, Inc.*,
    No. 02 C 4773, 2003 U.S. Dist. LEXIS 2466 (N.D. Ill. Feb. 20, 2003)............................14, 15

*Emerald Partners v. Berlin*,
    726 A.2d 1215 (Del. 1999) .....................................................................................................32

*Freudensprung v. Offshore Tech. Servs., Inc.*,
    379 F.3d 327 (5th Cir. 2004) ..................................................................................................18

*Freuler v. Parker*,
    No. H-10-3148, 2012 U.S. Dist. LEXIS 34057 (S.D. Tex. Mar. 14, 2012) .............................29

*Gantler v. Stephens*,
    965 A.2d 695 (Del. 2009) .......................................................................................................39

*Garner v. Todd (In re Todd Entm't, LLC)*,
    397 B.R. 795 (N.D. Tex. 2008).........................................................................................49, 52

*Gentry Steel Fabrication, Inc. v. Howard S. Wright Constr. Co. (In re Gentry Steel Fabrication, Inc.)*,
    325 B.R. 311 (Bankr. M.D. Ala. 2005)....................................................................................53

*Glaser v. Norris*,
    No. 9538, 1992 Del. Ch. LEXIS 1 (Del. Ch. Jan. 6, 1992) ......................................................38

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ..................................................................................................11

*Guth v. Loft*,
    5 A.2d 503 (Del. 1939) ...........................................................................................................34

*In re Hoffman Adver. Grp. Inc.*,
    62 B.R. 823 (Bankr. S.D.N.Y. 1986).......................................................................................50

*Holmes v. Grubman (In re Holmes)*,
    306 B.R. 11 (Bankr. M.D. Ga. 2004).......................................................................................48

*Holt Oil & Gas Corp. v. Harvey*,
    801 F.2d 773 (5th Cir. 1986) ............................................................................................ *passim*

1932120.1

*In re Innovative Commun. Co.*,
    358 B.R. 120 (D. Del. 2006) ....................................................................................................48

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999) ...........................................................................................39, 41

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ....................................................................................16, 19, 20

*Kaye v. Lone Star Fund V (U.S.), LP*,
    453 B.R. 645 (N.D. Tex. 2011) ....................................................................................... *passim*

*Latesco, LP v. Wayport, Inc.*,
    No. 4167-VCL, 2009 Del. Ch. LEXIS 145 (Del. Ch. July 24, 2009) ......................................39

*Leonard v. Stemtech Int'l, Inc.*,
    No. 12-86-LPS-CJB, 2012 U.S. Dist. LEXIS 120525 (D. Del. Aug. 24, 2012) .....................29

*Lewis v. Anderson*,
    477 A.2d 1040 (Del. 1984) ....................................................................................................25

*In re Lukens Inc. Shareholders Litig.*,
    757 A.2d 720 (Del. Ch. 1999) ...........................................................................................29, 31

*Lyondell Chem. Co. v. Ryan*,
    970 A.2d 235 (Del. 2009) .......................................................................................................35

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) .............................................................................................28, 30, 32

*Manchester Inc. v. Lyle (In re Manchester, Inc.)*,
    417 B.R. 377 (Bankr. N.D. Tex. 2009) ...............................................................................50, 52

*Maxor Nat'l Pharmacy v. Gearreald*,
    No. 2:11-CV-045-J, 2011 U.S. Dist. LEXIS 80031 (N.D. Tex. Jul. 22, 2011) ............... *passim*

*McCall v. Sw. Airlines Co.*,
    661 F. Supp. 2d 647 (N.D. Tex. 2009) ..............................................................................10, 11

*Metro Commc'ns Corp. BVI v. Advanced MobileComm Tech. Inc.*,
    854 A.2d 121 (Del. Ch. 2004) ...........................................................................................39, 40

*Mid-Atl. Truck Ctr., Inc. v. Par-Mor Ltd. (In re Pak-Mor Manf. Co.)*,
    No. SA-06-CA-658-RF, 2007 U.S. Dist. LEXIS 62198 (W.D. Tex. Aug. 10, 2007) .............14

*Middle South Energy, Inc. v. City of New Orleans*,
    800 F.2d 488 (5th Cir. 1986) ..................................................................................................48

v

*Midland Food Servs., LLC v. Castle Hill Holdings V, LLC*,
    792 A.2d 920 (Del. Ch. 1999)............................................................................................25, 26

*In re Mobile Steel Corp.*,
    563 F. 2d 692 (5th Cir. 1977) ................................................................................................47

*N.A. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
    930 A.2d 92 (Del. 2007) ........................................................................................................24

*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*,
    437 F.3d 1145 (11th Cir. 2006) .............................................................................................23

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002).....................................................................................................31

*Patterson v. Dietze*,
    764 F.2d 1145 (5th Cir. 1985) ...............................................................................................18

*In re Ply Gem Industries, Inc. Shareholders Litig.*,
    C.A. No. 15779-NC, 2001 Del. Ch. LEXIS 84 (Del. Ch. Jun. 26, 2001)................................29

*Reed v. Linehan (In re Soporex, Inc.)*,
    463 B.R. 344 (Bankr. N.D. Tex. 2011)........................................................................... *passim*

*Rhodes v. Prince*,
    No. 08-10794, 2010 U.S. App. LEXIS 700 (5th Cir. Jan. 12, 2010).......................................11

*Schmermerhorn v. CenturyTel, Inc. (In re SkyPort Global Commc'ns., Inc.)*,
    Nos. 08-36737, Adv. No. 10-03150,  2011 Bankr. LEXIS 123 (Bankr. S.D. Tex. Jan. 13,
    2011).......................................................................................................................................24

*Sefton v. Jew*,
    201 F. Supp. 2d 730 (W.D. Tex. 2001)....................................................................................21

*Simmons v. Peavy-Welsh Lumber Co.*,
    113 F.2d 812 (5th Cir. 1940) .................................................................................................11

*Smith v. Moody (In re: Moody)*,
    77 B.R. 566 (S.D. Tex. 1987) .................................................................................................26

*Solash v. Telex Corp.*,
    Cir. Nos. 4518, 9528 and 9525, 1988 Del. Ch. LEXIS 7 (Del. Ch. Jan. 19, 1988) ................43

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................................11

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011)..................................................................................................1, 12, 13

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006) ...................................................................................34, 35

*Stuart v. Spademan*,
   772 F.2d 1185 (5th Cir. 1985) ...........................................................................4, 19

*In re Suburbia Systems, Inc.*,
   17 B.R. 132 (Bankr. W.D. Mo. 1981)........................................................................52

*Superior Offshore Int'l Inc. v. Schaefer*,
   Civ. No. H-11-3130, 2011 U.S. Dist. LEXIS 101176 (S.D. Tex. Sept. 8, 2011)...................30

*Terry Mfg. Co. v. Steel Law Firm, P.C. (In re Terry Mfg. Co.)*,
   323 B.R. 507 (Bankr. M.D. Ala. 2005)........................................................................52

*In re Trados Inc. S'holder Litig.*, Cir. No. 1512-CC, 2009 Del. Ch. LEXIS 128
   (Del. Ch. July 24, 2009) ..................................................................................... 35-36

*Tyson v. Austin Eating Disorders Partners*,
   No. A-13-CA-180-SS, 2013 U.S. Dist. LEXIS 87249 (W.D. Tex. Jun. 20, 2013)................21

*In re U.S. Abatement Corp.*,
   39 F.3d 556 (5th Cir. 1994) ...................................................................................47

*U.S. Bank Nat'l Ass'n., Litig. Trustee v. Verizon Commc'ns Inc.*,
   892 F. Supp. 2d 805 (N.D. Tex. 2012) ..................................................................24, 49

*VeraSun Energy Corp. v. West Plains Co. (In re VeraSun Energy Corp.)*,
   No. Adv. 11-53143, 2013 Bankr. LEXIS 2634 (D. Del. Jun. 28, 2013) ...............................14

*In re West Coast Interventional Pain Medicine, Inc.*,
   435 B.R. 569 (Bankr. N.D. Ind. 2010).......................................................................49

*Wood v. Wood (In re Wood)*,
   825 F.2d 90 (5th Cir. 1987) ...................................................................................13

**Statutes**

8 Del. C. §102(b)(7) ................................................................................... *passim*

10 Del. C. § 3114 ......................................................................................................50

11 U.S.C. §510.........................................................................................................46

28 U.S.C. §1334.......................................................................................13, 14, 24, 48

28 U.S.C. §1338.......................................................................................................15

28 U.S.C. §1404.................................................................................................1, 4, 48

28 U.S.C. §1408.....................................................................................................................1

28 U.S.C. §1412...................................................................................................................48

**Other Authorities**

Fed. R. Civ. P. 8(a) ...........................................................................................................11

Fed. R. Civ. P. 9(b) .....................................................................................................12, 38

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 4, 11

Fed. R. Civ. P. 23.1 ...........................................................................................................25

Federal Rule of Bankruptcy Procedure 7004................................................2, 12, 14, 15

Federal Rule of Bankruptcy Procedure 7009.......................................................................1

Federal Rule of Bankruptcy Procedure 7012 ......................................................................1

Federal Rule of Bankruptcy Procedure 7087..................................................................1, 48

Federal Rule of Bankruptcy Procedure 1014 ......................................................................1

H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977) ..........................................................27

Franklin Balotti and Jesse A. Finkelstein, *Balotti and Finkelstein's Delaware Law of
    Corporations and Business Organizations,* § 4.29 (2007) ......................................28

1932120.1

### DEFENDANTS JOSEPH COSTELLO, SY KAUFMAN AND MARK PERRY'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY COURT JUDGE:

Defendants Joseph Costello, Sy Kaufman and Mark Perry (collectively, "Director Defendants") hereby move, pursuant to Federal Rules of Bankruptcy Procedure 7012 and 7009 and Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss with prejudice this action and all claims asserted against them by the Plaintiff, the Think3 Litigation Trust ("the Trust"), in its Complaint filed on May 15, 2013.[1] The Trust's Complaint fails to state any claim against the Director Defendants upon which relief may be granted, and, accordingly, the Complaint must be dismissed as to them. Alternatively, the Defendants seek to transfer this proceeding to the United States District Court for the District of Delaware pursuant to 28 U.S.C. §1404, 28 U.S.C. §1408, 28 U.S.C. §1412, and Federal Rules of Bankruptcy Procedure 1014 and 7087.

### Preliminary Statement

The Trust's Complaint fails as a matter of law both procedurally and substantively.

None of the Director Defendants have filed proofs of claims,[2] and the time for doing so has long passed. Thus, this Court lacks the constitutional authority, pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (2011), to finally determine the Trust's non-core state law claims, and the Director Defendants have not and will not consent to such a determination. *See also Reed v. Linehan (In re Soporex, Inc.),* 463 B.R. 344, 366 (Bankr. N.D. Tex. 2011) (concluding that the court lacks the constitutional authority to finally determine the Trustee's state law breach of

---

[1] The Complaint asserts Count 1, Count 2, Count 3, Count 8 and Count 9 against the Director Defendants.

[2] Because the Director Defendants have not filed (nor can they file) any proofs of claim, Counts 8 and 9 of the Trust's claims, for subordination and for a declaratory judgment for disallowance and subordination of claims, are moot, as they have no object, and thus they also fail as a matter of law.

fiduciary duty claims against defendants who have not filed proofs of claim). Moreover, as the debtor's Plan of Reorganization has been confirmed, the Trust's claims do not fall within this Court's "related to" jurisdiction. Consequently, nationwide service of process via Rule 7004 is not applicable, and instead the Trust must establish personal jurisdiction via the traditional "minimum contacts" test. However, no court can exercise jurisdiction over the Director Defendants in Texas, because the requisite contacts simply do not exist. Indeed, the Court's exercise of jurisdiction over the Director Defendants would violate due process because: (1) they do not have the required minimum contacts with Texas, and (2) maintenance of this suit in Texas would offend traditional notions of fair play and substantial justice. Because this Court lacks personal jurisdiction over the Director Defendants, the Court must dismiss the Trust's Complaint as to each of the Director Defendants in its entirety.

In truth, by its Complaint, the Trust is seeking to obtain a windfall from a merger between ESW Capital, Inc. ("ESW"), the sole shareholder of the Debtor, and the prior Think3, Inc. ("Think3"), which closed in September 2010, seven months before any bankruptcy petition was filed. In that Merger, ESW, via a wholly-owned subsidiary, acquired the prior Think3 for the paltry sum of one dollar, plus $115,000 in closing costs. As part of that Merger, ESW – and consequently the new Think3 ("New Think3") – were on notice of and acquiesced to the pre-Merger acts and transactions about which the Trust now seeks to complain. Moreover, upon the close of that Merger, the stockholders of the prior Think3 **ceased to have any rights** as Think3 stockholders. Despite this, the Trust purports to bring claims on behalf of *old* Think3 and its stockholders that are grounded in the duties that *old* Think3's directors and officers owed to *old* Think3 and its stockholders. The Trust, which only has the authority to bring claims that the Debtor itself could bring, has no standing to assert claims of, or on behalf of, *old* Think3 or its

2

stockholders, as the Debtor itself could not bring such claims. Therefore, Counts 1 through 3 of the Complaint fail as a matter of law, because they are barred not only by the terms of the Merger Agreement itself (and common sense), but also by the decades-old doctrine articulated by the United States Supreme Court in *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, 417 U.S. 703 (1974).

Substantively, under Delaware law, the Director Defendants cannot be held liable for monetary damages for any alleged violations of the duty of care, including claims of gross negligence. To the extent the Trust's allegations in Count 1 are premised on such allegations,[3] and the entirety of Count 2 is (on its face), they fail as a matter of law. As authorized by Section 102(b)(7) of the Delaware General Corporation Law (the "DGCL"), old Think3's stockholders adopted an exculpatory charter provision that eliminated the personal liability of its directors for claims that they breached their duty of care. *See Brehm v. Eisner (In re Walt Disney Co., Deriv. Litig.),* 906 A.2d 27, 65 (Del. 2006).

In addition, the Trust fails adequately to plead claims for breach of fiduciary duty and fraud in any event. Count 1 of the Complaint sets forth a laundry list of acts or failures to act by which the Director Defendants are alleged to have breached duties owed to *old* Think3. These vague allegations, in many instances unsupported by any facts – let alone the requisite particularized facts – fail to rebut the presumption of the business judgment rule to which the decisions of the Director Defendants are entitled. Similarly, the Trust's attempt to establish a breach of fiduciary duty by the Director Defendants predicated on their failure to exercise corporate oversight is nothing more than an attempt to hold the Director Defendants personally

---

[3] *See* Compl.¶44 ("Defendants breached these fiduciary duties by engaging in the conduct described above and below which includes but is not limited to self-dealing, bad faith and/or gross negligence.").

liable for business decisions that, in hindsight, did not turn out well. Such allegations are simply not colorable.

Alternatively, Defendants seek to transfer this adversary matter to the United States District Court for the District of Delaware. The Trust seeks to recover from the Director Defendants – none of whom have any connection to the State of Texas – for alleged acts that took place in connection with running a non-Texas based Delaware corporation. As the Director Defendants have no connection to the State of Texas, and Delaware law governs the Trust's claims, for the convenience of the parties and in the interests of justice, this case, if not dismissed, should be transferred to Delaware.

## FACTS[4]

### **History of Think3**

In 1997, CAD LAB, Inc. was incorporated as a California corporation. Compl. ¶14. Over the next, three years, CAD LAB underwent name changes and merged into other entities. *Id.* By 2000, CAD LAB had become Think3, Inc. and was a Delaware corporation. Compl. ¶14. Think3 was a Delaware corporation through the time that it was acquired on September 28, 2010, by ESW and, in fact, remained a Delaware corporation after the acquisition as well. Compl. ¶19 & Cumings Decl.,[5] Ex. 1 at 1; *Id.* at Ex. 10 (Certificate of Merger of HSCI, Inc. and Think3, Inc.). Immediately prior to its acquisition, Think3's office address was at 7723 Tylers

---

[4] Solely for purposes of their motion to dismiss pursuant to Rule 12(b)(6) do the Director Defendants accept the well-pleaded factual allegations in the Complaint. With respect to their argument to dismiss for lack of personal jurisdiction and, in the alternative, to transfer venue, the Director Defendants rely, as is proper, upon their accompanying declarations. When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, "the court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); 28 U.S.C. §1404(a).

[5] Concurrently with this memorandum, the Director Defendants also submit the Transmittal Declaration of Brian T. Cumings in Support of this Motion to Dismiss (the "Cumings Decl.").

Place Blvd., Suite 106, West Chester, Ohio 45069. *See* Cumings Decl., Ex. 2 (Certificate of NonForeign Entity Status).

**The Defendants**

Defendants Costello, Kaufman and Perry served as directors of Think3 in the years prior to Think3's merger with ESW. An additional defendant, Filippo Zuccarello, also served as an officer and director of Think3. Together, these four individuals constituted the Board of Think3. Tom Davis and Fabrizio Giudici also served as officers of Think3. Compl. ¶¶5 & 7.[6]

None of the Director Defendants has any relevant connections to Texas. For example, Defendants Costello and Perry have never resided in Texas, have never maintained a place of business in Texas, do not own property in Texas, and do not maintain bank accounts, telephone listings, mailing addresses or agents for service of process in Texas. *See* Costello Decl. ¶¶3-4; Perry Decl. ¶¶3-4. While Defendant Kaufman has lived in Texas, he did so for less than one year more than fifty years ago, in 1962, when he was temporarily assigned there to conduct a field engineering assignment. Kaufman Decl. ¶3. Other than that, Defendant Kaufman, like Defendants Costello and Perry, has not maintained a place of business in Texas, does not own property in Texas, and does not maintain a bank account, telephone listing, mailing address or an agent for service of process in Texas. Kaufman Decl. ¶4.

Each of these defendants served as directors of Think3 until September 28, 2010, when Think3 entered into an Agreement and Plan of Merger with ESW (the "Merger"). During the entire time that each Director Defendant served as a director of Think3, Think3 was never a Texas corporation, its US headquarters were not located in Texas, board meetings were not held

---

[6] Counsel understands that the remaining defendants, Filippo Zuccarello, Thomas Davis, Nest Consulting Ltd. and Fabrizio Giudici, have not to date been properly served under the Hague Convention, and counsel has not been retained to represent them at this time.

1932120.1

in Texas, and none of the directors ever traveled to Texas in connection with the Merger. Kaufman Decl. ¶¶7-9; Perry Decl. ¶¶8-10; Costello Decl. ¶¶8-10.

Upon the Merger, each of the Director Defendants resigned their Board positions effective as of September 28, 2010, the effective date of the Merger, and played no further role with respect to Think3's business or affairs. Kaufman Decl. ¶6 & Exhibit A; Perry Decl. ¶7 & Exhibit A; Costello Decl. ¶7 & Exhibit A.

**The Trust's Allegations**

The gravamen of the Trust's Complaint is that the Board's actions leading up to and in connection with the Merger "violated [the Board's] fiduciary duties and decreased the value of Think3 prior to the Merger." Compl. ¶19. The Trust, while complaining in passing about a variety of purported Board failures, focuses on three specific events that form the basis for all of its allegations.

### Bridge Financings

In 2009, the Board is alleged to have authorized $1,326,000 in debt financing, with promissory notes that were issued primarily to entities with which the Defendant Directors are alleged to be associated.[7] Compl. ¶27. Specifically, New Enterprise Associates 10, L.P. loaned Think3 $593,495.76; Crosslink Offshore Ventures II L.L.C. loaned Think3 $193,564.58; Crosslink Offshore Ventures III, LLC loaned Think3 $158,724.32; Crosslink Crossover Fund V, L.P. loaned Think3 $35,238.58; and Omega Bayview LLC loaned Think3 $18,976.76. Compl. ¶29. Defendant Costello personally loaned Think3 $50,000. *Id.* In exchange for providing

---

[7] The Complaint contains conclusory allegations that Defendant Perry and Kaufman participated in the 2009 and 2010 bridge financings through various entities in which they had a financial interest and/or controlled. Compl. ¶¶29 & 34. The Complaint fails to allege what, if any, role Perry or Kaufman had with respect to these entities.

1932120.1

Think3 with a (much needed) cash infusion, each lender received a promissory note from Think3, as well as warrants to purchase additional shares of Think3's stock. Compl. ¶27.

In 2010, Think3 again sought to raise money via debt financing, this time raising $740,715.25. Compl. ¶31. The Complaint is devoid of any information regarding who specifically contributed funds or the amount that each contributed.[8] The funds were allegedly used in connection with a joint venture with Beijing E-Tech Technology Co., Ltd. in China (the "China JV"). Compl. ¶31. Think3 is alleged to have committed in 2008 to an investment of $10,000,000 USD in the China JV. Compl. ¶25. The only funds actually alleged to have been provided were the funds from the 2010 Loan. Compl. ¶31. The China JV ultimately failed because, purportedly, Think3's China-based partners took China JV's capital. Compl. ¶25.

### Italian Liabilities

The Complaint also focuses on alleged liability for back taxes or other charges associated with Think3's Italian workforce. Think3 conducted business in Italy through a branch office. Compl. ¶16. According to the Complaint, at some unknown time, Think3 began to accrue back taxes or other liabilities that would be due if and when any of its Italian workforce were terminated. Compl. ¶24. As of 2009, the amount accrued was approximately $20 million. *Id.* The Trust alleges that Think3's Board was grossly negligent in managing this liability, because its only plan was to obtain a seven-year payout agreement from the Italian government. Compl. ¶24. Moreover, Think3's Board is alleged to have failed to consult with any experts as to the

---

[8] According to the Note and Warrant Termination Agreements entered into as part of the Merger (*see* Cumings Decl., Ex. 4-9, and Compl. ¶34 (referencing loan terminations)), the 2010 Loan included the following: NEA 10 loaned Think3 an additional $354,966.97 (Cumings Decl., Ex. 9); Crosslink Crossover Fund V L.P. loaned Think3 an additional $21,076.02 (Cumings Decl., Ex. 8); Crosslink Ventures III, L.L.C. loaned Think3 an additional $94,932.26 (Cumings Decl., Ex. 7); CrossLink Offshore Ventures III loaned Think3 an additional $115,770.05 (Cumings Decl., Ex. 6); Omega Bayview LLC loaned Think3 an additional $16,446.52 (Cumings Decl., Ex. 4); and Defendant Costello loaned Think3 an additional $29,904.77 (Cumings Decl., Ex. 5).

potential legal ramifications of the employee and tax liabilities arising from operating in Italy until mid-2010. *Id.*

*After* the Merger and *after* the Director Defendants resigned from Think3's Board, a substantial portion of Think3's Italian workforce was apparently terminated. *Id.* at ¶24. That event triggered Think3's Italian creditors to commence Italian insolvency proceedings against Think3 and its Italian Subsidiary. *Id.* at ¶20. That bankruptcy is, in turn, alleged to have caused Think3 to file for bankruptcy in this Court. *Id.* at ¶21.

### The Merger

In 2010, prior to any insolvency proceedings, Think3 was purchased by ESW. Compl. ¶34. The transaction was structured as a reverse triangular merger, whereby ESW formed a wholly-owned subsidiary, HSCI, Inc. ("HSCI"). Cumings Decl., Ex. 1 (Merger Agreement). HSCI merged with and into Think3, with Think3 becoming a wholly-owned subsidiary of ESW. *See* Cumings Decl., Ex. 1, §2.01. The surviving corporation was named think3, Inc. ("New Think3"). *See* Cumings Decl., Ex. 1, §2.05.

The Merger Agreement provided that:

> As of the Effective Time,[9] all [Think3] Capital Stock issued and outstanding immediately prior to the Effective Time, **shall no longer be outstanding and shall automatically be cancelled and retired and shall cease to exist, and each holder of a certificate representing such [Think3] Capital Stock shall no longer have any rights as a stockholder in [Think3]**, except appraisal rights pursuant to Section 262 or the right to receive the Stockholder Consideration allocable to such [Think3] Capital Stock, if any, without interest.

Cumings Decl, Ex.1, §3.02. Thus, as of the effective date of the Merger (September 28, 2010), all of Old Think3's stock was cancelled and those stockholders *ceased* to have any rights as stockholders, other than statutory appraisal rights.

---

[9] Pursuant to the Merger Agreement, the Effective Time is defined in Section 2.03 as the date and time at which ESW filed a certificate of merger with the Delaware Secretary of State. The Certificate of Merger was filed at 4:55 pm on September 28, 2010. *See* Cumings Decl., Ex. 10 (Certificate of Merger of HSCI, Inc. and Think3 Inc.).

Also pursuant to the Merger Agreement, the 2009 and 2010 Loans by Defendant Costello, NEA 10, and the CrossLink and Omega entities were terminated. Compl. ¶34. Thus, upon consummation of the Merger, each of the Defendants or their affiliated entities lost tens to hundreds of thousands of dollars that they had loaned to Think3.

Defendants Zuccarello and Giudici, who had also participated in the 2009 bridge loan, did not have their debts terminated as part of the Merger. Compl. ¶35. Instead, each received amended notes that reflected the amount of unpaid salary each was due from Think3. Compl. ¶35; Cumings Decl., Ex. 11 & Ex. A thereto (stockholder information statement and consent).

In addition, a Mandatory Prepayment Agreement ("MPA") was entered into between Think3, ESW and Think3's former counsel, Wilson Sonsini Goodrich and Rosati, PC ("WSGR"). Cumings Decl., Ex. 3. Pursuant to the MPA, if Toyota Caelum paid an outstanding invoice, then the received would be applied to Messrs. Zuccarello and Giudici's amended promissory notes, as well as to a note held by WSGR. Compl. ¶36. Under this arrangement, on or about January 7, 2011, Mr. Zuccarello received $240,832.15 and Mr. Giudici received $99,437.54. Compl. ¶¶37 & 39.

### New Think3, Inc.'s Bankruptcy

On May 18, 2011, New Think3 filed a voluntary petition for relief under Chapter 11. Compl. ¶12. The claims of New Think3 were preserved in a reorganized debtor pursuant to the Modified Amended Plan of Reorganization dated June 29, 2012, and confirmed by this Court on July 3, 2012. Compl. ¶3. Pursuant to that Plan, a Litigation Trust was established in which "any and all claims and causes of action that were owned by the Debtor or its Estate as of the Effective Date[10] shall vest in the Litigation Trust." Docket Entry 533, pp. 7-8.[11]

---

[10] Pursuant to the Plan, "Effective Date" means "the first Business Day following the Confirmation Date on which (a) the Confirmation Order is not stayed, (b) all conditions to the effectiveness of the Plan have been satisfied or

None of the Defendants nor the entities with which they are alleged to be associated who made loans to Think3 in 2009 and 2010 (which, as noted, were terminated in the Merger) filed Proofs of Claim in connection with New Think3's bankruptcy. *See* Claims Register. The date for doing so has now passed, and as such, the Director Defendants, as well as the entities with which they are alleged to be associated, could not now do so, nor do they have any basis for doing so. *See* Docket Entry No. 323 (establishing claims bar date of November 14, 2011).

## ARGUMENT

### I.    STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must set forth factual allegations that give rise to a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re: Soporex, Inc.*, 463 B.R. at 367. This standard requires more than mere possibility, and the complaint must contain enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the alleged facts are merely consistent with a defendant's liability, "it stops short of the line between possibility and plausibility of entitlement to relief," and the claims will not survive. *See id.* (internal quotation marks and quotation citation omitted)*; McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 653 (N.D. Tex. 2009) ("Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief."). When faced with self-contradictory allegations or allegations that

---

waived as provided in the Plan, and (c) the Reorganized Debtor has Filed a notice of the Effective Date." Docket Entry No. 533, Exhibit A, page 5; *see* Docket Entry No. 572 (effective date is September 28, 2012).

[11] In connection with a motion to dismiss, the Court is permitted to take judicial notice of documents filed in the bankruptcy case. *In re Soporex, Inc.*, 446 B.R. at 765 n.12.

contradict matters properly subject to judicial notice or by exhibit, a court may draw its "judicial experience and common sense" in evaluating the plausibility of a plaintiff's claim. *See Iqbal*, 556 U.S. at 679; *Simmons v. Peavy-Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir. 1940) (where there is conflict between allegations in a complaint and exhibits attached thereto, the exhibit controls, and trial court properly dismissed claims where written correspondence attached as an exhibit to the complaint made clear that no liability existed); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit).

While the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party, it is not required to accept as true legal conclusions couched as factual allegations. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009); *see McCall*, 661 F. Supp. 2d at 653 (Fed. R. Civ. P. 8(a) demands "more than an unadorned accusation devoid of factual support."). Thus, review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) involves a two-pronged approach. *Iqbal*, 556 U.S. at 678-79. First, the court should identify the allegations that are not entitled to a presumption of truth because they are no more than conclusions. *Rhodes v. Prince*, No. 08-10794, 2010 U.S. App. LEXIS 700, at *6 (5th Cir. Jan. 12, 2010); *Iqbal*, 556 U.S. at 678. Second, the court will presume the truth only of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679; *Rhodes*, 2010 U.S. App. LEXIS 700, at *6.

In addition, fraud claims must meet the heightened pleading standard of Rule 9(b), under which "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. Tex. 2010).

11

II.     **THIS COURT LACKS CONSTITUTIONAL AUTHORITY OVER THE TRUST'S CLAIMS WHICH ARE OUTSIDE THE BANKRUPTCY COURT'S "RELATED TO" JURISDICTION, AND THEREFORE PERSONAL JURISDICTION DOES NOT EXIST BECAUSE RELIANCE UPON RULE 7004 TO ESTABLISH JURISDICTION IS IMPROPER**

In *Stern v. Marshall*, the Supreme Court held that a bankruptcy court, as an Article I tribunal, may not constitutionally enter a final judgment on a debtor's counterclaim that would not necessarily be resolved by the resolution of the debtor's objection to the claimant's proof of claim. 131 S. Ct. at 2618; *In re: Soporex, Inc.*, 463 B.R. at 362. In so doing, the Supreme Court emphasized the distinction between "public" rights and "private" rights. *Stern*, 131 S. Ct. at 2613-14. In the bankruptcy context, the distinction is drawn between "actions that seek 'to augment the bankruptcy estate' [which constitute private rights] and those that seek a 'pro rata share of the bankruptcy res' [which constitute public rights]." *Id.* at 2618. "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.*

After *Stern*, it is clear that the state law claims asserted by the Trust in Counts 1 through 3 are claims that require the exercise of Article III power, and thus are claims that cannot be finally adjudicated by this Court. The Trust's claims for breach of fiduciary duty, gross negligence and fraud, like the claims at issue in *Stern*, are "in no way derived from or dependent upon bankruptcy law; [they are] state tort action[s] that exist[] without regard to any bankruptcy proceeding." *Id.* Moreover, the claims asserted by the Trust are state law claims for breach of fiduciary duty and fraud against three Director Defendants who have *not* filed Proofs of Claim. *See supra*, page 10.[12] Consequently, this Court lacks the constitutional authority to finally

---

[12] Because the Defendants have no proofs of claim to adjudicate, the fact that the Trust has also sought to assert empty subordination and disallowance claims in Counts 8 and 9 does not change the analysis.

determine the Trust's claims against the Director Defendants. *See In re Soporex, Inc.* 463 B.R. at 366; *see also Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding.").

In addition, despite the Trust's assertion that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §157, the Supreme Court expressly clarified in *Stern* that 28 U.S.C. §157 *is not* jurisdictional. *Stern*, 131 S.Ct. at 2607 (citation omitted) ("Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction."). Instead, "[s]ubject matter jurisdiction over bankruptcy cases and proceedings remains in the district court pursuant to 28 U.S.C. §1334." *See In re Soporex, Inc.* 463 B.R. at 363, n.4. Indeed, the Trust asserts that this proceeding "arises in and relates to" the underlying bankruptcy case, invoking the language of Section 1334(b). *Compare* Compl. ¶2 *with* 28 U.S.C. §1334(b) ("the district court shall have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under title 11"). The post-confirmation context of this case further limits the "related to" jurisdiction that a federal court may exercise. As the Fifth Circuit explained in *Bank of La. v. Craig's Stores of Tex., Inc., (In re Craig's Stores of Tex., Inc.),* 266 F.3d 388, 390 (5th Cir. 2001) (citation omitted):

> After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. No longer is expansive bankruptcy court jurisdiction required to facilitate "administration" of the debtor's estate, for there is no estate left to reorganize.

Thus, "[t]he question is not whether a post-confirmation proceeding could conceivably affect the debtor's estate, but whether it actually pertains to the implementation of the plan." *Mid-Atl.*

*Truck Ctr., Inc. v. Par-Mor Ltd.* (*In re Pak-Mor Manf. Co.*), No. SA-06-CA-658-RF, 2007 U.S. Dist. LEXIS 62198, at *8 (W.D. Tex. Aug. 10, 2007). None of the allegations against the Director Defendants have anything to do with the interpretation or execution of the Debtor's plan, and therefore do not fall within the Court's post-confirmation jurisdiction. *In re Craig's Stores,* 266 F.3d at 390 (holding that bankruptcy court did not have jurisdiction over post-confirmation breach of contract claims where claims did not bear on the interpretation or execution of the debtor's plan). The mere fact that there is a potential to increase the assets of a litigation trust and its beneficiaries does not by itself create a close nexus sufficient to confer "related to" bankruptcy court jurisdiction. *VeraSun Energy Corp. v. West Plains Co.* (*In re VeraSun Energy Corp.)*, No. Adv. 11-53143, 2013 Bankr. LEXIS 2634, at *20 (D. Del. Jun. 28, 2013) ("As a practical matter, the Court observes that if the prospect of an increased recovery were sufficient to establish the requisite nexus, then bankruptcy courts would enjoy post-confirmation jurisdiction over almost any conceivable claim or cause of action a post-confirmation debtor could file.").[13]

Because of this, the Trust cannot rely upon Rule 7004 to establish personal jurisdiction over the Director Defendants. The case of *Cytomedix, Inc. v. Safeblood Technologies, Inc.*, No. 02 C 4773, 2003 U.S. Dist. LEXIS 2466, at *7 (N.D. Ill. Feb. 20, 2003) is instructive. There the Court determined that "related to" jurisdiction was lacking because the patent infringement case brought post-confirmation of the plan was not brought under 28 U.S.C. §1338, but rather was brought as an adversary proceeding. *Id.* at *5. The defendants objected that the case was outside of the "related to" powers, an objection that was significant because "if this case is governed by

---

[13] Bankruptcy jurisdiction is governed by 28 U.S.C. §1334, and the plan itself does not confer jurisdiction on the court. 8 Collier Bankr. ¶ 1142.04.

our bankruptcy jurisdiction, then we can exert personal jurisdiction over all the defendants under the nationwide service of process provisions of the Federal Rules of Bankruptcy Procedure. On the other hand, if there is no 'related to' jurisdiction, then we do not have personal jurisdiction over the defendants ..." *Id.* at *5-6. The court determined that the patent litigation was filed after the bankruptcy court entered an order approving technical amendments to the plan, and, consequently, the court's "related to" jurisdiction had expired and the court did not have subject matter jurisdiction to hear the suit. *Id.* at *11. As a result, the plaintiff had to establish minimum contacts over the defendants in order to establish personal jurisdiction. Because the plaintiff was unable to do so, the court did not have personal jurisdiction. *Id.* at *12.[14]

Similarly, here the Trust cannot demonstrate any basis other than Rule 7004 to exercise personal jurisdiction over the Director Defendants, and because the instant suit falls outside of the court's "related to" jurisdiction, the case must be dismissed as to the individual defendants for lack of personal jurisdiction.

### A. Legal Standard to Determine Personal Jurisdiction

The Trust bears the burden of establishing the Court's jurisdiction upon a motion to dismiss for lack of personal jurisdiction by a foreign defendant. *Maxor Nat'l Pharmacy v. Gearreald*, No. 2:11-CV-045-J, 2011 U.S. Dist. LEXIS 80031 at *5-6 (N.D. Tex. Jul. 22, 2011). The Texas long-arm statute, which governs personal jurisdiction in Texas over foreign defendants, has been interpreted to extend to the limits of due process. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986); *Maxor Nat'l Pharmacy,* 2011 U.S. Dist. LEXIS

---

[14] The Director Defendants note that the court in *In re American Housing Foundation*, 469 B.R. 257 (N.D. Tex. 2012), rejected a somewhat similar argument, although there the point was merely made in passing: one of the defendants summarily argued that because the court lacked subject matter jurisdiction, it also lacked personal jurisdiction over the defendants. *Id.* at 267, n.7. The Court found that because the trustee had brought the action under Section 544 (which is not applicable to these Director Defendants), it had subject matter jurisdiction, and therefore Rule 7004(d) was available to provide for nationwide service of process. *Id.* at 267.

80031, at *6. This requires that (1) the nonresident defendant have minimum contacts with the forum state, and (2) the exercise of jurisdiction over that nonresident defendant does not offend traditional notions of fair play and substantial justice. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

"Minimum contacts" require that the nonresident have "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws . . . such that he should reasonably anticipate being haled into court in the forum state." *Holt Oil & Gas Corp.,* 801 F.2d at 777. There are two types of minimum contacts – specific jurisdiction and general jurisdiction. *Johnston,* 523 F.3d at 609. Because neither exist in this action, and because requiring the Director Defendants to defend against this action in Texas would violate notions of fair play and substantial justice, the motion to dismiss should be granted.

## B. Specific Jurisdiction Does Not Exist Over The Director Defendants.

To make a finding of specific jurisdiction, "the court must examine the relationship among the defendant, the forum, and the litigation." *Holt Oil & Gas Corp.,* 801 F.2d at 777. The nonresident defendant's contacts directly related to the litigation must include "some act by which the defendant purposefully availed himself of the benefits of the forum state." *Maxor Nat'l Pharmacy,* 2011 U.S. Dist. LEXIS 80031 at *11. No such act exists in this case. Prior to and during the Merger, the Director Defendants never availed themselves of the benefits of Texas. Upon execution of the Merger on September 28, 2010 – before many of the disputed actions in the Complaint had even occurred – the Director Defendants ceased to be directors of Think3. Kaufman Decl. ¶6; Perry Decl. ¶7; Costello Decl. ¶7. It was only at this point that Think3's principal place of business was relocated to Texas, where its buyer, ESW, was also based. As such, specific jurisdiction does not exist in this case.

16

The only allegations in the Complaint that arguably speak to Texas being able to exercise jurisdiction are: (1) "The claims herein arise out of Defendants' contacts with Think3 and operations in Austin, Texas," Compl. ¶11; and (2) "Think3's principal place of business and center of main interests is in Austin, Texas."[15] Compl. ¶16. However, nowhere in the Complaint does the Trust attempt to establish that the Director Defendants' alleged actions as directors of Think3 were aimed at any particular state, let alone Texas. Nor is there a basis for any such claim to be made. It is undisputed that Think3 was a Delaware corporation. Cumings Decl., Ex. 1 at 1, & 2 (Merger Agreement, Certificate of Nonforeign Status-Entity); Compl. ¶14. The allegations of Paragraph 16 of the Complaint notwithstanding, it cannot be disputed that Think3's principal place of business was never located in Texas during the time that Kaufman, Perry, and Costello served as directors. Kaufman Decl. ¶8; Perry Decl. ¶9; Costello Decl. ¶9. The principal place of business was only moved to Texas upon closing of the Merger, at which point – as the Trust acknowledges in Paragraph 19 of the Complaint – the Director Defendants ceased to be directors of Think3 or to otherwise play any role with Think3. Kaufman Decl. ¶6; Perry Decl. ¶7; Costello Decl. ¶7. Thus, any alleged acts or omissions by the surviving entity or its board after the Merger occurred are inapplicable to Kaufman, Perry, and Costello. Moreover, when they were directors, the Director Defendants never traveled to Texas in connection with Think3's business or in connection with the Merger negotiations. Kaufman Decl. ¶9; Perry Decl. ¶10; Costello Decl. ¶10. Nor did Think3 ever hold board meetings in Texas. Kaufman Decl. ¶ 9; Perry Decl. ¶10; Costello Decl. ¶10. As such, there is no jurisdiction in Texas over the Director Defendants in connection with the allegations in this action.

---

[15] The Trust's summary allegations are insufficient to establish personal jurisdiction in any event. *See Maxor Nat'l Pharmacy*, 2011 U.S. Dist. LEXIS 80031 at *5 ("when making a *prima facie* showing of jurisdiction, the plaintiff must provide affirmative proof based on facts in the record and may not rely solely on unsupported allegations").

17

Nor can the Trust rest upon the execution of the Merger itself for a sufficient jurisdictional connection between the Director Defendants and the state of Texas. Although ESW maintained its headquarters in Texas, merely entering into a contract with a resident of the forum is insufficient to establish personal jurisdiction. *Holt Oil & Gas Corp.*, 801 F.2d at 778; *Maxor Nat'l Pharmacy*, 2011 U.S. Dist. LEXIS 80031, at *12. This is especially true where the contract provides that the laws of another state will govern the contract. *Holt Oil & Gas Corp*, 801 F.2d at 778; *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 345 (5th Cir. 2004) (contract's choice of law provision is relevant to minimum contacts analysis). The Merger Agreement specifically states that the laws of Delaware govern any dispute arising therefrom. Cumings Decl., Ex. 1 at §8.11. Furthermore, at the time of the Merger, both ESW and its wholly owned subsidiary, HSCI, were Delaware corporations. *Id.*, Ex. 1 at p. 1. The new corporation formed by the Merger was likewise incorporated in Delaware. Cumings Decl., Ex. 1 at §5.01. The fact that ESW's headquarters were located in Texas was simply coincidental. *See Holt Oil & Gas Corp.,* 801 F.2d at 778 ("mere fortuity that [Plaintiff] happens to be a resident of the forum" is not enough to demonstrate purposeful availment of the forum state); *see also Patterson v. Dietze*, 764 F.2d 1145, 1147 (5th Cir. 1985) (same).

Moreover, in connection with the Merger negotiations, the Director Defendants never travelled to Texas. Kaufman Decl. ¶9; Perry Decl. ¶10; Costello Decl. ¶10. To their knowledge, they did not even participate in conference calls regarding the Merger in which any of the participants were located in Texas. Kaufman Decl. ¶9; Perry Decl. ¶10; Costello Decl. ¶10. Even if they had, this would not be sufficient to establish jurisdiction. *See Maxor Nat'l Pharmacy*, 2011 U.S. Dist. LEXIS 80031, at *13 (directors' votes by conference call in favor of merger were not a contact with Texas sufficient to establish personal jurisdiction); *see also*

*Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985) ("[A]n exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws."). As stated *supra*, upon execution of the Merger Agreement, the Director Defendants no longer maintained any role with Think3, and thus post-Merger events cannot a provide basis for finding minimum contacts with Texas. In sum, there is simply no basis for specific jurisdiction in Texas over the Director Defendants.

### C. General Jurisdiction Does Not Exist Over The Director Defendants.

General jurisdiction is assessed by evaluating "contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston*, 523 F.3d at 610 (*quoting Access Telecomm., Inc. v. MCI Telcomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). "In order to support general jurisdiction, the Defendants' contacts with Texas must be continuous and systematic [t]his requires extensive contacts and is a difficult standard to meet." *Maxor Nat'l Pharmacy*, 2011 U.S. Dist. LEXIS 80031, at *7 (citation omitted). "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Johnston*, 523 F.3d at 609-10 (citation omitted). Contacts "must be viewed *in toto*, and not in isolation from one another. *Id.* The Fifth Circuit "has consistently imposed [a] high standard" when ruling on general jurisdiction. *Id.* at 611. The Director Defendants barely, if at all, have *any* contacts with Texas, let alone the type that are so "continuous and systematic" they could establish general jurisdiction over the Director Defendants in Texas. *Id.* As such, general jurisdiction also does not exist in Texas over the Director Defendants.

19

The Director Defendants have been residents of California for many years. Kaufman Decl. ¶2; Perry Decl. ¶2; Costello Decl. ¶2; *see also* Compl. ¶¶ 8-10. Costello and Perry have never resided or worked in Texas, and Kaufman lived in Texas for only one year in 1962, over fifty years ago, conducting a field assignment for his New York employer. Kaufman Decl. ¶3; Perry Decl. ¶3; Costello Decl.¶3. The Director Defendants do not own or lease real property or motor vehicles in Texas. Kaufman Decl. ¶4; Perry Decl. ¶4; Costello Decl. ¶4. They are not registered to vote there. *Id.* They do not maintain bank accounts in Texas. *Id.* They have never personally entered into contracts that were performable in Texas. *Id.* They do not maintain telephone listings, mailing addresses, or agents for service of process in Texas. *Id.* They have never paid taxes in Texas. *Id.*

Only Costello and Perry have traveled to Texas for personal visits, and not for several years. Kaufman Decl. ¶4; Perry Decl. ¶5; Costello Decl. ¶5. None of the Director Defendants have ever previously been involved in lawsuits in Texas, filed suit against any person or entity in Texas, or otherwise been subject to the Texas judicial system. Kaufman Decl. ¶5; Perry Decl. ¶6; Costello Decl. ¶6.

*Holt Oil & Gas Corp. v. Harvey*, in which the Court found that minimum contacts existed to establish general jurisdiction, provides an illuminating contrast to the instant action. 801 F.2d at 779. In that case, the defendant attended college in Texas; was formerly employed in Texas; owned real estate in Texas; had travelled to Texas on numerous occasions to visit his children; frequently visited Texas for recreation; and had transacted a great deal of business in Texas. However, even in *Holt Oil*, the Court referred to the analysis as "close" and stated that "[n]one of Harvey's various contacts with Texas, alone, would support an exercise of general jurisdiction." *Id.* at 779. The Director Defendants have only the most attenuated connection with Texas, which

20

certainly does not rise to the level of "continuous and systematic" contacts, which *in toto* might satisfy due process. *Id.*

Furthermore, even if Texas had personal jurisdiction over the *former* (pre-merger) Think3 Inc., this would not cause general jurisdiction to attach to the Director Defendants individually for their actions as Think3 directors, either. The fiduciary shield doctrine provides that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual," because it would violate notions of fairness. *Maxor Nat'l Pharmacy*, 2011 U.S. Dist. LEXIS 80031 at *9 (internal quotation marks and quoting citation omitted).[16] Thus, even if the Director Defendants had incidental contacts with Texas in their role as Think3 directors, this Court still could not exercise personal jurisdiction over them. *See Tyson v. Austin Eating Disorders Partners*, No. A-13-CA-180-SS, 2013 U.S. Dist. LEXIS 87249, at *6 (W.D. Tex. Jun. 20, 2013). There should be no question that general jurisdiction in Texas over the Director Defendants is utterly lacking here.

### D. Maintenance Of This Action In Texas Would Violate Traditional Notions Of Fair Play And Substantial Justice.

Because the Director Defendants lack minimum contacts with Texas, there is no need to consider whether exercising jurisdiction over them would offend traditional notions of fair play and substantial justice. Regardless, the facts show that not only do the Director Defendants lack minimum contacts with Texas, but that it would be fundamentally unfair to require them to defend this lawsuit in Texas. A consideration of whether Texas jurisdiction would violate traditional notions of fair play and substantial justice focuses on, among other things, the interest

---

[16] There are only two recognized exceptions to the fiduciary shield doctrine: (1) where the court finds the corporation is the "alter ego" of the individual defendant, or (2) where the individual defendant "committed an intentional tort directed at the forum state." *Sefton v. Jew*, 201 F. Supp. 2d 730, 743 (W.D. Tex. 2001). Neither has any application in this case.

21

of the state in providing a forum, the convenience of the parties, and basic fairness. *Maxor Nat'l Pharmacy*, 2011 U.S. Dist. LEXIS 80031 at *6.

The Director Defendants all live in California, have never been held to be subject to Texas jurisdiction, and have never brought suit in Texas or availed themselves of this state's legal protections. Kaufman Decl. ¶5; Perry Decl. ¶6; Costello Decl. ¶6. They have done nothing to cause them to foresee being sued in Texas. Defending a suit in Texas would be burdensome and inconvenient. Furthermore, Texas has little, if any, interest in adjudicating this dispute, which involves issues of Delaware law; Delaware corporations; former directors of a Delaware corporation (residing in California); and agreements governed by Delaware law, which specify that any disputes resulting therefrom must be brought in the courts of Delaware. The record evidence demonstrates that requiring the Director Defendants to defend this action in Texas would violate notions of fair play and substantial justice. For all of the above reasons, the Complaint should be dismissed for lack of personal jurisdiction over the Director Defendants.

## III.  THE TRUST LACKS STANDING TO ASSERT PRE-MERGER CLAIMS OF THE FORMER THINK3 OR ITS STOCKHOLDERS

On September 28, 2010, old Think3 was acquired by ESW via its wholly-owned subsidiary, HSCI, for the purchase price of ONE DOLLAR.[17] Cumings Decl., Ex. 1 at p. 6. Thus, post-merger, ESW became the sole stockholder of the New Think3. Notably, as is clear from the terms of the Merger Agreement, ESW, as the purchaser, was fully aware:

- of the two bridge financings that occurred in 2009 and 2010 (Cumings Decl., Ex. 1, §4.12(a)) & Exs. 4-9;

- that the 2009 and 2010 Loans made by the Director Defendants or their associated entities would be (and were) terminated as a consequence of the Merger (Cumings Decl., Exs. 4-9);

---

[17] ESW also paid closing costs in the amount of $115,000.

- that the loans by two other Defendants (Zuccarello and Giudici) would be increased in connection with the Merger to reflect unpaid salary (Cumings Decl., Ex. 11 & Ex. A thereto (stockholder information statement and consent form), & Ex. 1 §6.01 (provision of Merger Agreement requiring same); and

- of the Mandatory Prepayment Agreement (Cumings Decl., Ex. 3).

Not only was ESW on notice of these matters, but it acquiesced to them as part of the Merger Agreement. In other words, ESW knew *prior* to acquiring Think3 of the acts and transactions about which the Trust now seeks to complain. Because of this, ESW is estopped, both directly and indirectly via New Think3, from bringing suit against the Directors of *old* Think3 for breaches of fiduciary duty related to matters that were disclosed in the Merger Agreement. *See, e.g., Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006) (bankruptcy trustee stands in the shoes of the debtor and acquires no greater rights than those of the debtor; if a claim by the debtor would have been subject to the defense of *in pari delicto* at the commencement of the bankruptcy, then the same claim asserted by the trustee is subject to the same affirmative defense).

Further, ESW acquired Think3 on an "as is" basis, meaning that the stockholders, directors and officers of old Think3 had no obligation to ESW, HSCI, or New Think3 for any breaches of the Company's warranties, representations and covenants set forth in the Merger Agreement, other than fraud and willful misconduct. *See* Cumings Decl., Ex. 1 at §8.01(a) & (b). In short, ESW acquired Think3 for an incredibly low sum because Think3 was in financial distress – this was a "fire sale" situation. To now allow the Trust (which seeks to assert assigned claims of the Debtor – that is, New Think3 – and its sole stockholder, ESW), to sue *old* Think3's directors for alleged injuries to *old* Think3 and its stockholders and creditors[18] would be to authorize the

---

[18] Moreover, the creditors of a Delaware corporation that is insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against the corporation's directors in any event. *N.A. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 04 (Del. 2007). As old Think3's

pursuit of a windfall recovery that would not only recoup but exceed what was paid to acquire old Think3 in the first place.  This is simply illogical, and not surprisingly, it is not permitted under the law.[19]  The U.S. Supreme Court decision in *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703 (1974), adopted by the Delaware Court of Chancery in *Courtland Manor, Inc. v. Leeds*, 347 A.2d 144 (Del. Ch. 1975), and followed in Texas as well, makes plain that the Trust's claims must be dismissed.[20]

---

creditors could not assert direct claims against the Director Defendants, neither can the Trust seek to do so on their behalf.

[19] The incongruity of the Trust's position is underscored by its allegation that "the action of the Board leading up to and in connection with the Merger violated their fiduciary duties and decreased the value of Think3 *prior to the Merger.*" Compl. ¶19.  But any injury in that regard would have been suffered by *old* Think3 and its stockholders, not new Think 3 or its stockholder, ESW, which benefited by paying a rock-bottom purchase price of $1.00 for the company.  Thus, the Trust seeks to assert purported claims of new Think3 and its stockholder, ESW, to recover for an alleged injury that they did not suffer, and recoup a hypothetically higher purchase price that they did not pay.

[20] Breach of fiduciary duty claims are analyzed under the laws of the state of incorporation.  The acts that the Trust complains of occurred pre-Merger, when Think3 was incorporated in Delaware.  Hence, claims of breach of fiduciary duty (Count 1) and gross negligence (Count 2) are governed by the law of Delaware.  *Schmermerhorn v. CenturyTel, Inc. (In re SkyPort Global Commc'ns., Inc.)*, Nos. 08-36737, Adv. No. 10-03150, 2011 Bankr. LEXIS 123, at *53 (Bankr. S.D. Tex. Jan. 13, 2011) (finding that a claim relating to the internal affairs of a company should be governed by the law of the state which was the state of incorporation at the time that claim arose; the law that applies to such a claim should not change simply because the company that is the owner of the claims is incorporated in a new state); *U.S. Bank Nat'l Ass'n., Litig. Trustee v. Verizon Commc'ns Inc.*, 892 F. Supp. 2d 805, 828 (N.D. Tex. 2012) (citation omitted) ("the law of the state of incorporation – in this case, Delaware – governs '(1) the rights, powers, and duties of [a corporation's] governing authority, governing persons, officers, owners, and members[.]'"); *ASARCO LLC v. Ams. Mining Corp.*, 382 B.R. 49, 69 (S.D. Tex. 2007) ("Federal courts sitting in Texas must apply the law of the state of incorporation when a corporation's internal affairs are implicated.").  Count 3 asserts a claim of fraud against the Board in connection with seeking written consent from the old Think3 stockholders to approve the Merger.  To determine which state's law applies to the Trust's fraud claim, Texas choice of law rules govern.  *In re Soporex*, 463 B.R. at 369 (where federal court sits by virtue of 28 U.S.C. §§ 1334 and 157, Texas choice of law rules are applied).  While Delaware and Texas' law regarding fraud is similar (*Schmermerhorn v. CenturyTel, Inc. (In re SkyPort Global Communs., Inc.)*, 2011 Bankr. LEXIS 123, at *126-127 (Bankr. S.D. Tex. Jan. 13, 2011), the law of Delaware is most relevant to the claim asserted by the Trust.  The Trust asserts a fraud claim based upon a Written Consent that was sent to Think3's stockholders regarding a Merger between two Delaware corporations that is evidenced by an agreement governed by Delaware law.  In addition, the Trust has premised a breach of fiduciary duty claim for fraud on the same allegations (*see* Compl. 44(vi) & (vii)), and as that claim is necessarily governed by Delaware law under the internal affairs doctrine, the Trust's fraud claim in Count 3 should be governed by Delaware law as well.

24

As explained by the Delaware Court of Chancery, the *Bangor Punta* Doctrine provides that:

> [A] shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the wrongful transaction. The basis for this rule is that where shareholders have purchased all or substantially all of the shares of a corporation at a fair price, they have personally sustained no injury from wrongs which occurred **prior** to their purchase, and consequently, any recovery on their part for such prior wrongs would constitute a windfall and would enable such shareholders to obtain funds to which they had no just title or claim. In addition, to allow recovery to subsequent shareholders for prior wrongs would permit them to recoup a large part of the price they agreed to pay for their shares even though they had received all they had bargained for. Finally, to allow recovery would be to permit after-acquiring shareholders to profit from wrongs done to others, and thus encourage speculative litigation.

*Midland Food Servs., LLC v. Castle Hill Holdings V, LLC*, 792 A.2d 920, 928-29 (Del. Ch. 1999). "The *Bangor Punta* Doctrine ensures that a purchaser who obtains a controlling interest in a corporation after potential claims arose against those persons from whom the purchaser obtained his shares cannot use his control of the corporate machinery to cause the corporation to assert those claims directly." *Id.* at 929.[21] That is exactly what the Trust seeks to do in its assertion of Debtor-assigned (*i.e.,* corporate) claims, and thus its claims, too, are barred by law.

In *Bangor Punta*, Bangor Punta acquired 98.3% of the outstanding stock of Bangor & Aroostook Railroad Co. ("BAR") via a subsidiary. *Id.* at 711. Bangor Punta controlled and directed BAR for a period of years. *Id.* Bangor Punta then sold all of its stock in BAR to Amoskeag Co. *Id.* BAR then brought suit against Bangor Punta and its subsidiary, alleging mismanagement and corporate waste during the time that Bangor Punta controlled BAR. *Id.* The Supreme Court recognized that Amoskeag, as the present owner of more than 99% of

---

[21] Such a rule is on all fours with the continuous ownership requirement found in Fed. R. Civ. P. 23.1, which prevents a person who obtains an ownership interest in a corporation after a claim arose from suing derivatively on behalf of the corporation, or from continuing to prosecute a derivative action following a merger. *See* Fed. R. Civ. P. 23.1; *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984).

BAR's shares, would be the principal beneficiary of any recovery by BAR. *Id.* As Amoskeag acquired its stock after the prior wrongdoing occurred, by causing the present action to be brought by what was now its subsidiary (BAR), Amoskeag was seeking to not only recover the price it paid for BAR, but also to obtain a windfall for wrongs that Bangor Punta inflicted not upon Amoskeag, but upon BAR itself at a time when Bangor Punta owned it. *Id.* at 712.

The Supreme Court rejected the attempt, holding that "it is evident that Amoskeag would have no standing in equity" to maintain the action. *Id.* at 712. In so holding, the Court rejected the contention that because the action was brought in the name of BAR (the allegedly injured corporation), the Court could not look to the ownership of BAR in reaching its decision. "[W]here equity would preclude the shareholders from maintaining an action in their own right, the corporation would also be precluded. It follows that Amoskeag, the principal beneficiary of … petitioners' alleged wrongs, cannot avoid the command of equity through the guise of proceeding in the name of [BAR] which it owns and controls." *Id.* at 713; *see also Courtland Manor, Inc.,* 347 A.2d at 146-148 (applying *Bangor Punta* doctrine to bar claims of mismanagement and breach of fiduciary duty by the corporation against the former president and managing officer, where those controlling the corporation had purchased their shares for a fraction of their initial cost after the alleged wrongdoing had occurred); *Midland Food Services, LLC.,* 792 A.2d at 930 (where current owner of corporation was assigned its interest from corporations that acquired their shares directly from the CEO after his alleged wrongdoing occurred, *Bangor Punta* Doctrine barred plaintiffs' claims); *Smith v. Moody (In re: Moody)*, 77 B.R. 566, 580 (S.D. Tex. 1987) (citing *Bangor Punta* and noting that the "Trustee may not therefore recover on a corporate mismanagement claim where the [Debtor] himself would not be entitled to bring suit.").

26